NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANNE B. WAY,

               Plaintiff,

      v.

OHIO CASUALTY INSURANCE
COMPANY,

               Defendant.

HON. JEROME B. SIMANDLE

Civil Action
No. 04-4418 (JBS)

**OPINION**

APPEARANCES:

Alexander W. Ross, Jr., Esq.
Janice Heinold, Esq.
RAKOSKI & ROSS, P.C.
76 East Main Street
Marlton, New Jersey 08053-1526
    Attorneys for Plaintiff

Edward T. Ellis, Esq.
Jennifer T. Keegan, Esq.
Richard S. Hyland, Esq.
MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
Liberty View, Suite 600
47 Haddonfield Road
Cherry Hill, New Jersey 08002
    Attorneys for Defendant

**SIMANDLE**, District Judge:

This matter comes before the Court upon Defendant Ohio

Casualty Insurance Company's motion for summary judgment.

Plaintiff seeks payment of severance pay benefits under

Defendant's separation pay plan.  Plaintiff alleges that

Defendant's decision to deny benefits violates Section 1132(a) of

the Employee Retirement Income Security Act and cannot withstand scrutiny because it was arbitrary and capricious.  For the reasons discussed herein, Defendant's motion for summary judgment will be granted.

I.  **BACKGROUND**

Plaintiff Anne B. Way filed an Amended Complaint in this Court on December 13, 2004.[1]  Plaintiff claims that Defendant Ohio Casualty Insurance Company ("Defendant" or "Ohio Casualty") wrongfully refused to pay her severance pay benefits in accordance with Defendant's Separation Pay Plan (the "Plan") after her employment ended with the company on February 11, 2004. Plaintiff's Amended Complaint alleges that Defendant's denial of Plaintiff's severance pay benefits covered by the Plan constitutes an unlawful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA").  (Amend. Compl. ¶ 13.)  In addition, the Amended Complaint claims that Plaintiff is entitled to reasonable

_____

[1] Plaintiff's original complaint included claims for breach of contract, fraud and/or misrepresentation, and the tort of outrage. Defendant filed a motion for judgment on the pleadings. Plaintiff filed opposition and, in the alternative, moved for leave to file an amended complaint.  On December 2, 2004, this Court held that Defendant's severance plan qualifies as an employee benefits plan under the Employee Retirement Income Security Act. Plaintiff's related claims under state law were preempted and dismissed. Plaintiff was allowed leave to file an amended complaint which was filed on December 13, 2004.

attorney's fees and costs pursuant to 29 U.S.C. § 1132(g). (Amend. Compl. ¶ 14.)

### A.    The Separation Pay Plan

Defendant established and administers an ERISA benefits plan, titled "Separation Pay Plan," which provides employees nationwide, including Plaintiff, an opportunity to receive certain severance pay where eligible in accordance with its terms.  (Affidavit of Elizabeth S. Aumann, ¶ 4; Separation Pay Plan of The Ohio Casualty Insurance Company, Aumann Aff., Ex. A.) The plan, which bears an effective date of April 6, 2000, is administered by Defendant's Welfare Plan Committee (the "Benefits Committee")[2] and grants the Benefits Committee full authority to interpret the Plan's terms and determine eligibility of Plan benefits.  (Aumann Aff. ¶ 3-5; Separation Pay Plan, Aumann Aff., Ex. A.)  Specifically, the Plan grants the Benefits Committee:

> [F]ull authority to interpret the provisions and terms of [the Plan], including authority to determine the eligibility for separation pay... to take such other action as the [Benefits] Committee deems equitable under the circumstances in light of the policy.

(Separation Pay Plan p. 4; Aumann Aff., Ex. A.)  The Plan is a so-called "unfunded" or "self-funded" plan, as funds paid out under the Plan come directly from Defendant's general treasury fund. (Statement of Edward Ellis, Esq., counsel for Defendant,

---

[2] Through amendments to the Plan, the name "Welfare Plan Committee" was changed to the "Benefits Committee." (Aumann Aff. ¶ 4.)

made during oral argument on October 27, 2005).  Such a plan is
in contrast to a "funded" ERISA plan where funds to pay claims
under the plan are paid out from a separate ERISA trust fund and
the employer's funding of the trust fund is determined by an
actuarial formula.

The Plan provides, <u>inter alia</u>, that if an employee's
permanent layoff is "due to [Defendant's] sale of all or a
portion of its assets to another person or entity, <u>the employee
will not be eligible for separation pay benefits</u>." (Separation
Pay Plan, Aumann Aff., Ex. A.)(emphasis added)  The Plan
continues, however, to state:

> This assumes the employee <u>has the opportunity to accept
> employment with the purchaser at a location within
> fifty (50) miles of the employee's last worksite</u> with
> [Defendant] in a job paying no less than eighty-five
> percent (85%) of the employee's base rate of pay at the
> time of purchase....

(<u>Id</u>.)(emphasis added) This is the provision of the Plan
implicated in Plaintiff's Amended Complaint.[3]  (Amend. Compl. ¶
9.)

### B.   Plaintiff's Termination and Contact with Proformance

Plaintiff was employed as an adjuster by Defendant in its
Voorhees, New Jersey office.  (Amend. Compl. ¶¶ 6-7.) Beginning

---

[3] The severance pay benefit is equal to one week's base pay
for each year of service as of the date of the permanent layoff,
with a minimum benefit equal to four weeks base pay.  (Separation
Pay Plan, Aumann Aff., Ex. A, p. 2.)  Payments under the Plan are
made in two-week increments on regularly scheduled paydays.  (<u>Id</u>.
at p. 3.)

in December of 2001, Defendant sold and transferred its private
passenger automobile business to Proformance Insurance Company
("Proformance").  (Aumann Aff. ¶ 6.) Under the terms of the sale,
Proformance (located in Freehold, New Jersey) was obligated to
offer certain affected employees "employment on substantially
equivalent terms of [their] employment" with Defendant. (Letter
from Catherine Helen Dooley to Nancy Way, dated 2/11/04 (the
"Release Memo"), Declaration of Jennifer T. Keegan, Ex. 1.)
Plaintiff was one of the employees. (Id.) On February 11, 2004,
Plaintiff and several other employees were asked to attend a
meeting where they were notified that, as part of the sale and
transfer of a business division to Proformance, they were being
laid off.  (Anne B. Way Depo. Tr. at 45-46, Keegan Decl., Ex.
3.)[4]  Also at that meeting, Plaintiff was presented with the
Release Memo which stated, among other things:

> Following your release date...from [Ohio Casualty], a
> representative from [Proformance] will contact you
> regarding employment. [Proformance] is obligated to
> offer you employment on substantially equivalent terms
> of [your current] employment [with Ohio Casualty]....

(Release Memo, Keegan Decl., Ex. 1.)  Plaintiff signed the
Release Memo under a paragraph titled "Acknowledgment and
Agreement" which stated:

---

[4]    In her deposition testimony, Defendant characterized the
lay off as her being "released to Proformance."  (Anne B. Way
Depo. Tr. at 45-46, Keegan Decl., Ex. 3.)

> I have read, understand and agree to the foregoing and
> state that I have had an opportunity to ask [Ohio
> Casualty] any questions I may have had pertaining to
> the transfer of my employment.  I am not relying upon
> any representation by [Ohio Casualty] or otherwise that
> is contrary to or not otherwise expressed in this
> memorandum.

(Id.)

Two days after the meeting and her lay off notification,
Plaintiff received a letter from Proformance stating that
Proformance was contacting her to "determine [Plaintiff's]
interest in employment" with Proformance in Freehold, New Jersey.
(Letter from Cynthia Codella to Nancy Way[5] dated 2/13/2004,
Keegan Decl., Ex. 2.)  Enclosed with the letter was an
application for employment. (Id.) The letter further stated that
Proformance:

> "request[s] that [Plaintiff] complete this application
> and return it.... The completion and return to us of
> this application will signal to [Proformance] your
> interest and is required before a bona fide offer of
> employment can be made."

(Id.)  Plaintiff never completed or returned the application or
contacted anyone at Proformance about employment.  (Way Depo. Tr.
at 55, Keegan Decl., Ex. 3.)

---

[5]  Both the Release Memo and the Letter from Codella to
Plaintiff were addressed to a "Nancy Way" rather than to
Plaintiff's name of record (Anne B. Way).  Also, the Release Memo
was signed by "Nancy Way."  The Court assumes, since this issue
was not addressed by the parties, that Plaintiff and Nancy Way
are the same person and that "Nancy" is a nickname for Plaintiff.

C.   **Determination by Defendant's Benefits Committee that Plaintiff was not Eligible for Severance Pay Benefits**

Defendant's Benefits Committee considered Plaintiff's eligibility for separation pay under the Plan and concluded that Defendant was not obligated to provide Plaintiff with severance benefits.  The Benefits Committee's rationale was that Plaintiff was given the opportunity to accept employment by Proformance at a location within fifty (50) miles of her last worksite and in a job paying at least eighty-five percent (85%) of her last rate of pay at Ohio Casualty - and therefore, she was excluded under the Plan.  (Release Memo, Keegan Decl., Ex. 1.)  Specifically, the Benefits Committee (1) determined that, by contacting Plaintiff about employment at Proformance, Plaintiff had been offered the "opportunity to accept employment" there, (Aumann Aff. ¶ 8), and (2) that Proformance's Freehold office was within 50 miles of Defendant's Voorhees office - interpreting the term a "location within fifty (50) miles" to mean 50 "straight-line" miles. (Aumann Aff. ¶ 9.)

Plaintiff disagreed and on February 27, 2004, Plaintiff's counsel sent a letter to Defendant demanding payment of separation pay benefits under the Plan. (Letter from Alexander W. Ross, Jr. to Catherine Helen Dolley dated 2/27/04, Aumann Aff., Ex. B.) Plaintiff argued that she was eligible for separation pay under the Plan because (1) Plaintiff was not offered employment at Proformance (rather, Proformance's letters of February 13,

7

2004 was only an invitation to complete an application for employment) and (2) Proformance's Freehold offices were more than 50 miles from Plaintiff's previous job site (calculated by driving distance between the two offices, rather than the straight-line distance).  (Ross Letter, Aumann Aff. ¶ 8-9, Ex. B.)  These conditions not being met, according to Plaintiff, she was therefore eligible for severance pay in the amount of $14,473.05, together with accumulated unused vacation pay. (Amend. Compl. 9-10.)

## II.  <u>DISCUSSION</u>

Defendant makes two main arguments in support of its motion for summary judgment.  First, Defendant argues that, because Defendant's Plan is an ERISA plan that grants the plan administrator (the Benefits Committee) full authority to interpret the terms of the Plan and determine eligibility for severance pay, this Court must review the Benefits Committee's decision to deny severance pay under an arbitrary and capricious standard. Under this standard of review (or even a <u>de</u> <u>novo</u> standard) the Benefits Committee's interpretation of the terms "fifty (50) miles" and "opportunity to accept employment" are reasonable and therefore should not be set aside.  Second,

Defendant argues that, by signing the Release Memo, Plaintiff
waived any alleged right to claim entitlement to separation pay.[6]

## A.   Standard of Review

ERISA does not set out the standard of review for an action
brought under Section 1132(a)(1)(B) by an employee alleging that
she has been denied benefits she is entitled to under a covered
plan.  <u>See</u> 29 U.S.C. § 1132(a)(1)(B).  However, in <u>Firestone Tire
& Rubber Co. v. Bruch</u>, the Supreme Court held that when a
benefits plan affords the administrator discretionary authority
to construe the plan or determine eligibility for benefits, the
administrator's interpretation of the plan will be reviewed under
an "arbitrary and capricious" standard.  489 U.S. 101, 108-11.
This standard of review applies whether the administrator's
decision was based on the interpretation of the plan or factual
determinations (so long as the plan authorizes the administrator
to make such factual determinations).  <u>Mitchell v. Eastman Kodak
Co.</u>, 113 F.3d 433 (3d Cir. 1997). While an arbitrary and
capricious standard is proper, "if a benefit plan gives
discretion to an administrator or fiduciary who is operating
under a conflict of interest, that conflict must be weighed as a

---

[6]  During oral argument, Defendant restated its argument
with respect to the Release Memo as discussed more fully in
Section II.B., <u>infra</u>.  In short, Defendant's position now is
that, in signing the Release Memo, Defendant acknowledged the
contents of the Release Memo and waived her right to claim, at a
later date, that she did not understand its contents.

factor in determining whether there is an abuse of discretion." Firestone Tire & Rubber Co., 489 U.S. at 115 (internal quotations omitted.)  The Third Circuit established a "sliding scale method" for determining what modifications (if any) a court must make to the level of scrutiny it applies so that "the degree of scrutiny [intensifies] to match the degree of conflict."  Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 379 (3d Cir. 2000).

When, as here, an employer (or a committee established by the employer) both determines eligibility for benefits under a plan and pays benefits out of its own funds, a court must review the denial of benefits under a "somewhat heightened" arbitrary and capricious standard.  Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Wealth Plan, 298 F.3d 191 (3d Cir. 2002);[7] see also Vitale v. Latrobe Area Hosp., 420 F.3d 278,

---

[7]  In Smathers, after finding a conflict of interest existed where an employer both administered the benefit plan and paid benefits out of its own funds, the Third Circuit stated:

> In accordance with Pinto, we slide down the scale - according less deference to the administrator - and keep in mind the nature of [the employer's] financial interest as we consider whether the denial of [the plaintiff's] benefits was arbitrary and capricious....

Smathers, 298 F.3d at 199.  Following up Smathers, recently, the Third Circuit affirmed a district court's holding that an "unfunded" and self-administered benefits plan warranted a "slightly heightened form of arbitrary and capricious review." Stratton v. E.I. DuPont de Nemours & Co., 363 F.3d 250, 255 (3d Cir. 2004).

282 (3d Cir. 2005)("an employer-fiduciary may be subject to a conflict of interest requiring heightened scrutiny when...it pays benefits out of operating funds rather than from a separate ERISA trust fund....") The heightened level of scrutiny is warranted because a potential for a conflict arises where an employer both determines eligibility for benefits and pays out those benefits from its own funds. Smathers, 298 F.3d at 198; see also Kosiba v. Merck & Co., 384 F.3d 58 (3d Cir. 2004)(A situation where "an employer pays claims out of its general operating funds [is] the situation most likely to introduce a structural conflict because the employer feels an immediate "sting" from paying the claim....") Such a "somewhat heightened" level of scrutiny established by Smathers, directs the district court to "conduct a more penetrating review of administrator's decision-making process than would normally be conducted under the arbitrary and capricious standard."[8]  Smathers, 298 F.3d at 199.

---

[8]  We note that not all employer administered and funded plans are subject to review under the heightened arbitrary and capricious standard. See Vitale, 420 F.3d at 282-83.  For example, recently the Third Circuit held that it was inappropriate to apply the heightened arbitrary and capricious standard of review to decisions made by a plan administrator where an employer (1) established an ERISA trust fund and (2) funded the plan by an actuarial formula where plan contributions were not directly influenced by individual benefits decisions. See id.  Of course, other circumstances could exists to trigger a heightened arbitrary and capricious standard (i.e., "demonstrated procedural irregularity, bias, or unfairness in the review of the claimant's application for benefits") but none were present in that case.  Id., quoting Kosiba, 384 F.3d at 66.

Here, the heightened arbitrary and capricious standard of review is appropriate. The Court concludes that, under the holdings of <u>Firestone</u> and <u>Mitchell</u>, an arbitrary and capricious standard is warranted because Defendant's Plan (a) specifically authorizes the Benefits Committee to serve as administrator of the Plan and (b) grants the Benefits Committee authority to interpret the terms of the Plan and to determine the eligibility for separation pay. (Aumann Aff. ¶ 5; Separation Pay Plan p. 4, Aumann Aff., Ex. A.) Our analysis does not end there, however. Because the Defendant here is not only the claims administrator for the Plan (determining eligibility for benefits through the Benefits Committee) but also pays all benefits under the Plan from the general treasury funds of the company (rather than from an ERISA trust fund), the Court follows the holdings of <u>Smathers</u> and <u>Stratton</u> in concluding that a conflict of interest exists. (Aumann Aff. ¶4-5, and Statements made by counsel for Defendant to the Court at oral argument.) Such a conflict of interest warrants the application of a heightened arbitrary and capricious standard of review, requiring this Court to review more closely the Plan administrator's decision to deny benefits.

**B.    Whether, by Signing the Release Memo, Plaintiff Waived Her Right to Claim Entitlement to Separation Pay**

Defendant first argues that Plaintiff's claim for separation pay is barred by her signing of the Release Memo waiving such a claim. Both parties acknowledge that Plaintiff signed the

Release Memo.  The parties dispute, however, whether the agreement is enforceable.  In its moving papers, Defendant argues that Plaintiff knowingly and voluntarily waived any right to separation-pay related benefits by countersigning the Release Memo which (1) explicitly stated that she was "not eligible for separation-pay related benefits" from Defendant and (2) contained an "Acknowledgment and Agreement" stating, in part, that she read, understood and agreed with the content of the Memo.[9]

Plaintiff disputes the fact that Plaintiff's waiver was made either knowingly or voluntarily.  Rather, the Release Memo is unenforceable because (1) it was signed by Plaintiff while "under duress and without fully understanding the [Release Memo's] contents,"(Pl.'s Br. at 3.),[10] and (2) Plaintiff was not given consideration for her Release.

_____

[9]  The "Acknowledgment and Agreement" portion of the Release Memo states, in its entirety:

> I have read, understand and agree to the foregoing and state that I have had an opportunity to ask [Ohio Casualty] any questions I may have had pertaining to the transfer of my employment.  I am not relying upon any relying upon any representation by [Ohio Casualty] or otherwise that is contrary to or not otherwise expressed in this memorandum.

(Release Memo, Keegan Decl., Ex. 1.)  Plaintiff's signature and the date appear below this text.

[10]  Plaintiff argues that on the day she was informed of her lay off (1) she was "directed to sign [the Memo] before leaving [Ohio Casualty's] building" and (2) when she signed, she was confused and "extremely upset." (Id. at 3, 12; Way Depo. Tr. at 46-47.)

The Court concludes (and Defendant conceded as much at oral argument) that, in viewing the facts most favorable to the non-moving party, by signing the Release Memo, Plaintiff simply acknowledged that she understood the contents of the Release Memo, rather than acknowledging and agreeing to waiver of any rights to separation pay under the Plan.  Thus, the Release Memo's "Acknowledgment and Agreement" clause served only to prevent Plaintiff from later claiming that she did not understand the contents of the Release Memo, not to preclude her from bringing a claim for severance pay benefits some time in the future.  The Court proceeds to address the merits of Defendant's motion for summary judgment.

###       C.    Whether the Benefits Committee's Interpretation of the Plan was Within its Discretion

We must now subject the Benefits Committee's decision to deny Plaintiff separation pay benefits to the heightened arbitrary and capricious standard.  Under either the deferential or heightened arbitrary and capricious standard, "a court may not substitute its own judgment for that of a plan administrators...." Stratton, 363 F.3d at 256.  Accordingly, even under the heightened standard, "a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." Smathers, 298 F.3d at 199 quoting Orvosh v. Program of Group Ins. for Salaried

14

Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000).  Furthermore, whether a claim decision is arbitrary and capricious requires a determination "whether there was a reasonable basis for [the administrator's] decision, based upon the facts as known to the administrator at the time the decision was made." Smathers, 298 F.3d at 199-200 quoting Jett v. Blue Cross & Blue Shield of Alabama, Inc., 890 F.2d 1137, 1139 (11th Cir. 1989).  Finally, the Third Circuit instructs this Court that any deference the Court might ordinarily afford the administrator's decision must "be tempered due to [the employer's] conflict of interest." Smathers, 298 F.3d at 200.

Under this standard of review, this Court must address Defendant's arguments that the Benefits Committee was within its discretion to deny Plaintiff severance pay because Plaintiff (1) had the "opportunity to accept employment" with Proformance and (2) such employment is at a location "within fifty (50) miles" of Defendant's Voorhees office making her ineligible for benefits under the Plan.

### 1.  "Opportunity to Accept Employment" with Proformance

Defendant argues that the Benefits Committee's determination regarding Plaintiff's eligibility for severance pay was reasonable because she was given the "opportunity to accept employment" with Proformance but chose not to - cutting off the routine administrative process that would have lead to her

receiving an offer of employment with Proformance. (Def.'s Reply Br. at 9.) Defendant supports this argument with three pieces of evidence.  First, Defendant produced a February 13, 2004 letter from Cynthia Codella, Executive Vice President at Proformance stating that Proformance was contacting her "to determine [her] interest in employment" with Proformance and enclosed an application that, if returned, "will signal to [Proformance] [Plaintiff's] interest and is required before a bona fide offer of employment can be made." (Codella Letter, Keegan Decl., Ex. 2.)  Second, Defendant pointed to deposition testimony of Plaintiff in which she answered "yes" to the question of whether she understood that she "had the chance to work at Proformance." (Way Depo. Tr. at 54-55, Keegan Decl., Ex. 3.)  Finally, Defendant provides deposition testimony of the Plaintiff in which she clearly states that, after receiving the February 13, 2004 letter from Cynthia Codella, Plaintiff never contacted anyone at Proformance because, she "wasn't interested in the job" because it was "too far." (Id.)  Thus, Plaintiff was offered the opportunity to accept employment with Proformance but terminated the process of transferring her employment to Proformance. (Def.'s Reply Br. at 9.)

Plaintiff counters by arguing that (1) the Plan required Proformance to offer Plaintiff employment and Plaintiff was never expressly offered employment by Proformance.  (Pl.'s Br. at 12.)

16

Instead of an offer for employment, Proformance's letter was merely an invitation to apply for employment. (<u>Id</u>.)  As such, according to Plaintiff, she is entitled to separation pay under the Plan. (<u>Id</u>.)

Here, the central issue is whether the Benefits Committee's decision to deny Plaintiff benefits should stand when reviewed under the heightened arbitrary and capricious standard of review. It is not for this Court to determine whether Proformance's February 13, 2002 letter to Plaintiff (which enclosed an application for employment and the other communications between Proformance and Plaintiff around the time of her lay off) provided Plaintiff with the "opportunity to accept employment." Further, it is not for this Court to interpret this language of the Plan or to determine whether Proformance must make Plaintiff an offer of employment in order for the exclusionary language of the Plan to be satisfied (as Plaintiff advocates).  Such determinations would require this Court to substitute its own judgment for that of the administrator's. Instead, under the heightened arbitrary and capricious standard of review, the relevant inquiry is whether the determination by the Benefits Committee that Plaintiff was provided with an "opportunity to accept employment" was reasonable and based on the facts presented to the Benefits Committee.

17

This Court finds the Benefits Committee's determination -
namely that Proformance's gave Plaintiff an "opportunity to
accept employment" - was reasonable and supported by considerable
evidence.  The evidence that most strongly supports the Benefits
Committee's determination is Plaintiff's own deposition testimony
in which she answered "yes" to the question of whether she
understood that she "had the chance to work at Proformance."
(Way Depo. Tr. at 54-55, Keegan Decl., Ex. 3.)  The fact that
Plaintiff herself considered her communications with Proformance
(included the February 13, 2004 letter from Cynthia Codella) to
be an "opportunity to accept employment" at Proformance lends
credence to the Benefits Committee's determination of the same.
Second, it is certainly  reasonable to conclude from the February
13, 2004 letter and the wording of the Release Memo (that
Proformance was obligated to offer Plaintiff "employment on
substantially equivalent terms of [Plaintiff's current]
employment" at Ohio Casualty) that Proformance was providing
Plaintiff with an opportunity to work for Proformance.[11] (Codella

---

[11]  Plaintiff's counsel at oral argument makes much of the
fact that Plaintiff was not offered a job at Proformance, but
simply invited to apply for a job. Given the history between
Defendant and Proformance and the fact that Proformance was
contractually obligated to offer certain of Defendant's employees
(including Plaintiff) employment on substantially the same terms
as their current employment, asking Plaintiff to complete an
application is much different than a situation in which a person
sends an unsolicited resume to a firm hoping for employment.
Rather, it is reasonable for the Benefits Committee to conclude
that Plaintiff needed only to complete an employment application

Letter, Keegan Decl., Ex. 2; Release Memo, Keegan Decl., Ex. 1.) Instead of completing this administrative paperwork, Plaintiff stopped responding to Proformance's overtures because, according to her deposition testimony she "wasn't interested in the job" because it was "too far." (Way Depo. Tr. at 55, Keegan Decl., Ex. 3.)

### 2.    Employment within Fifty Miles of Previous Worksite

Defendant's Benefits Committee interpreted the Plan's term "a location within fifty (50) miles of the employee's last worksite" to mean that Proformance must offer Plaintiff employment within 50 "straight-line" miles of Defendant's Voorhees office.  Applying the "straight-line" interpretation of distance, the Benefits Committee determined Plaintiff was ineligible for severance pay benefits because Proformance's Freehold office is less than 50 straight-line miles from Defendant's Voorhees office.[12]  Defendant argues that the Committee's interpretation of the term "fifty (50) miles" to mean fifty straight-line miles (rather than fifty driving miles) was reasonable because (1) the plain language of the Plan simply says

_____

(solicited by Proformance) providing basic job and salary information before an offer would be made.

   [12]  The parties do not dispute that, using the straight-line distance of measurement, Defendant's Voorhees office is less than 50 miles from Proformance's Freehold office.  (Def's Reply Br. at 2.)

"fifty (50) miles" (rather than fifty driving miles) and (2) considerable case law exists to support the application of "straight-line miles" over driving distance measurements. (Def.'s Br. at 10-11.)[13]

Plaintiff argues that the two offices should be measured by the "ordinary usual and shortest route of public travel," not by the straight-line method. (Pl.'s Br. at 10.)  Plaintiff cites Kovacs v. Kaczorowski in support of her position. 3 N.J. Super. 469, 473 (Ch. Div. 1949)(Id.) Second, Plaintiff argues that because it is "well-settled" law that a contract should be strictly interpreted against the drafter, any ambiguities in the Plan should be strictly interpreted against Defendant. (Id. at 11.)  According to Plaintiff, because the Plan does not specify whether driving distance or straight-line distance should apply, it is ambiguous and the Court should apply Plaintiff's interpretation of 50 miles to be 50 driving miles.  (See id.)

As discussed in Section II.B.1, supra, it is irrelevant whether this Court would conclude that the appropriate method of measuring distances was by straight-line miles rather than driving distance miles. Instead, the issue before this Court is

---

[13]  Defendant's brief contains a string cite of cases in support of favoring the straight-line miles rather than driving-miles distance measurement. (Def.'s Br. at 11; see also note 14, infra.) Specifically, Defendant cites cases from the District of New Jersey, Fifth Circuit Court of Appeals, Eastern District of Pennsylvania, Eastern District of New York, and from state courts in South Carolina and Ohio. (Id.)

whether the Benefits Committee's interpretation was reasonable and supported by the facts known to the Benefits Committee at the time of their decision (as required under the heightened arbitrary and capricious standard).  The Court finds the Benefits Committee's interpretation of the term "a location within fifty (50) miles" to mean fifty straight-line miles to be reasonable. The Benefits Committee's interpretation (a) comports with the plain language of the Plan, (b) is consistent with the interpretation of similar terms adopted by numerous courts both in and outside of New Jersey,[14] and (c) is a logical, precise and predictable method of calculating the distance between two places (driving distances measurements, for example, can vary greatly due to different routes, primary vs. secondary roads, etc.) Thus, under the heightened arbitrary and capricious standard set forth in <u>Smathers</u>, this Court shall not set aside the Benefits Committee's determination of Plaintiff's ineligibility.

---

[14]   <u>See</u> <u>generally</u> <u>Delora Smelting & Refining Co. v. Engelhard Minerals and Chem. Corp.</u>, 313 F. Supp. 470, 474 (D.N.J. 1970); <u>Airwork Corp. v. Energy Maint. Corp.</u>, 1993 U.S. Dist. LEXIS 18040 (D.N.J. Dec. 22, 1993); <u>Crausman v. Curtiss-Wright Corp.</u>, 1988 U.S. Dist. LEXIS 8365 (D.N.J. Aug. 3, 1988); <u>Sprow v. Hartford Ins. Co.</u>, 594 F.2d 412, 417-18 (5th Cir. 1979); <u>Schwartz v. Marriot Hotel Servs., Inc.</u>, 186 F. Supp. 2d 245, 251-52 (E.D.N.Y. 2002); <u>United States v. Blount</u>, 940 F, Supp. 720, 723 (E.D. Pa. 1996); <u>Restaurant Row Assoc. v Horry County</u>, 335 S.C. 209, 221 (S.C. 1999); <u>Frederick D. Harris, M.D., Inc. v. University Hosp. of Cleveland</u>, 2002 Ohio App. LEXIS 1032 (Mar. 7, 2002).

In concluding that the Benefits Committee's determination was reasonable and based on the facts known to the Committee at the time, this Court is mindful that its deference to the Committee's decision is "tempered" and its inquiry "more penetrating" due to the conflict of interest present.  <u>Smathers</u>, 298 F.3d at 200. Indeed, because severance pay benefits are paid directly out of Defendant's general treasury funds, Defendant saves itself $14,473.05 (plus costs related to Plaintiff's accrued and unused vacation time) payable to Plaintiff by concluding that Plaintiff was provided the opportunity to accept employment within 50 miles of Defendant's Voorhees location and thus denying Plaintiff's claim. Potentially, Defendant could save itself considerably more as the Benefits Committee's interpretation of the term "fifty (50) miles" to mean "straight-line" mile measurement impacts the eligibility for benefits of all people laid off with Plaintiff and all other employees that ultimately were not hired by Proformance.  (<u>See</u> Def.'s Br. at 14, Keegan Decl., Ex. 4. (Defendant "has treated its employees consistently in that none of the employees similar to Plaintiff who were released from [Defendant] with the opportunity to work at Proformance received separation pay.") <u>See</u> <u>e.g.</u>, <u>Pinto</u>, 214 F.3d at 386 ("when more money was at stake -i.e., when a large class of beneficiaries requested and was denied benefits - the potential for conflict might invite closer scrutiny.") It cannot be said that, even with

22

this conflict of interest in mind, based on the information before it at the time it made its determination, the Benefits Committee's decision was arbitrary and capricious.  Instead, Plaintiff's determination that (1) Plaintiff was provided the "opportunity for employment" at Proformance and (2) the term "fifty (50) miles" means fifty straight-line miles was rational and based on consideration of relevant factors before it, and no reasonable fact finder could reach a contrary conclusion upon the record before the Benefits Committee.  Thus, for these reasons, summary judgment must be entered in favor of Defendant, Ohio Casualty.

## IV.  Conclusion

   For the reasons discussed above, Defendant's motion for Summary Judgment will be granted.  The accompanying Order is entered.

**December 16, 2005**                      **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                             United States District Judge